UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

KOFI YEBOAH,

Petitioner,

v.

TERRY CARLSON, Warden,

Respondent.

Civil No. 07-2131 (JMR/AJB)

**REPORT AND RECOMMENDATION**

---

This matter is before the undersigned United States Magistrate Judge on Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254. The matter has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, it is recommended that this action be **dismissed with prejudice**.

## I. BACKGROUND

A. Factual Background

In March 2004, Petitioner was tried before a jury in the state district court for Hennepin County, Minnesota, on charges of kidnaping and criminal sexual conduct. Petitioner's trial lasted six days.[1] On March 30, 2004, the jury began deliberations which continued through the next day. At 9:45 p.m., on March 31, 2004, the court, with the consent of Petitioner, his attorney, and the prosecutor, excused one juror from further service so that she could go on a scheduled vacation, which she disclosed during voir dire.

---

[1] Facts compiled from Minnesota Court of Appeals decision–State v. Yeboah, 691 N.W.2d 87 (Minn. App. 2005).

The remaining eleven jurors reported the next morning to resume deliberations, but one juror became ill and the court determined that she was "incapacitated", sent her home, and contacted counsel to determine how best to proceed. Shortly thereafter, the court explained to Petitioner, his counsel, and the prosecutor why it sent the ill juror home. The court also stated that it received notes from two other juror regarding schedule problems. One juror asked to make a telephone call to cancel a haircut appointment. Another juror was concerned that the trial may conflict with a job interview scheduled for the next day. The court also mentioned that a third juror was leaving for vacation the next day as she had indicated in voir dire.

The court then had the remaining ten jurors brought back to the courtroom and told them that they were being excused for the day but that they should return the next day. At that time, one juror stated that the jurors were "very strong on both sides" and that not much progress had been made at that point during deliberations. This information prompted the court to instruct the remaining ten jurors to return to the jury room, where the foreperson was to poll the jurors and report "only whether the majority of the people feel they can reach a verdict or they can't reach a verdict." Defense counsel objected to any polling because one juror was missing. When the jurors returned to the courtroom, the foreperson reported that they were not able to reach a unanimous decision and that the presence of the ill juror would not alter that conclusion.

The prosecutor then moved for a mistrial. Defense counsel opposed the motion, arguing that the jury had not deliberated long enough and that the jury poll was invalid without the ill juror. The prosecutor cited the vacation of one juror scheduled for the next day,

reminded the court that another juror had previously disclosed an impending vacation, and said she would not agree to a jury of fewer than ten members.

The court then pointed out that it and counsel had told the prospective jurors during voir dire on March 15 that the trial would take five days and that it was now April 1. The court then announced that it would have to grant the motion for a mistrial. When defense counsel responded that he and the prosecutor had agreed to accept a jury of ten members, the prosecutor stated that she would not agree to a jury of only ten jurors. Noting its concern about the "cumulative effect" of various jurors' schedule problems, the apparent deadlock, and the prosecutor's refusal to agree to a jury of ten people, the court declared a mistrial and discharged the jury. The state later moved for a retrial, which Petitioner opposed based on the argument that the motion was barred on the principle of double jeopardy. The court granted the state's motion and Petitioner appealed.

Petitioner was subsequently retried and convicted. In June 2006, Petitioner was sentenced to 68 months in prison. See Pet. 7 [Docket No. 1]. Petitioner did not thereafter challenge his conviction and sentence in any other state court proceeding. He is now serving his sentence at the Minnesota Correctional Facility in Moose Lake, Minnesota.

B. Procedural Background

After Petitioner was retried, convicted, and sentenced, he filed a direct appeal that presented three grounds for relief: (1) retrial was barred by the double-jeopardy clauses of the United States and Minnesota constitutions because the mistrial was declared over defendant's objection; (2) no manifest necessity existed for the declaration of the mistrial; and (3) the district court erred when it sent the incomplete jury in to determine whether or not they

could reach a verdict. Yeboah, 691 N.W.2d at 88. The Minnesota Court of Appeals considered and rejected all three of Petitioner's claims on the merits, and affirmed his conviction and sentence in all respects. Id. at. 93. Thereafter, the Minnesota Supreme Court denied Petitioner's application for further review on April 19, 2005.

On May 1, 2007, Petitioner filed his federal habeas corpus petition. See Pet. [Docket No. 1]. The petition listed four grounds for relief. Judge Boylan issued a Report and Recommendation ("R&R") on May 7, 2007, that Petitioner's application for a writ of habeas corpus be summarily dismissed without prejudice, unless Petitioner filed an entirely new amended habeas corpus petition listing only fully exhausted claims. See R&R 6 [Docket No. 3]. Petitioner filed an amended petition on June 4, 2007. See Am. Pet. [Docket No. 4]. On June 15, 2007, the Honorable James M. Rosenbaum declined to adopt Judge Boylan's previous R&R and remanded Petitioner's amended petition to Judge Boylan for consideration. See Order [Docket No. 6].

Petitioner's amended habeas corpus petition presents the same three claims for relief that he raised in his direct appeal: Ground One is the lack of manifest necessity to declare a mistrial claim, Ground Two is the claim that the district court erred when it sent an incomplete jury in to determine whether or not they could reach a verdict, and Ground Three is the double jeopardy claim. Id. For the reasons discussed below, the Court recommends that this case should be dismissed with prejudice.

## II. DISCUSSION

### A. Exhaustion

It is well established that a federal court may not entertain a petition for a writ of habeas

corpus on behalf of a state prisoner, unless the prisoner has first exhausted all available state court remedies for all of his claims. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). This exhaustion of state remedies requirement is based on the principles of comity and federalism; its purpose is to ensure that state courts are given the first opportunity to correct alleged federal constitutional errors raised by state prisoners. Id. at 844.

"Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts,... state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Id. at 845 (emphasis added). In other words, a prisoner must fairly present all of his constitutional claims to the highest available state court before seeking relief in federal court. Id. at 847. Thus, in Minnesota, a claim must be fairly presented to the Minnesota Supreme Court before it can be raised and decided in a federal habeas corpus proceeding. See Baldwin v. Reese, 541 U.S. 27, 29 (2004) ("the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review)").

In this case, Petitioner's current habeas corpus claims have been directly appealed to the Minnesota Court of Appeals and fairly presented to the Minnesota Supreme Court. See 691 N.W.2d at 87.

B. Grounds One and Two Are Not Actionable Federal Habeas Corpus Claims

In Ground One, Petitioner contends that no manifest necessity existed for the declaration of the mistrial. See Pet. 5 [Docket No. 4]. In Ground Two, Petitioner argues that

the district court erred when it sent the incomplete jury in to determine whether or not they could reach a verdict. The Court finds, however, that even though these claims were presented to the Minnesota Supreme Court, they must be summarily rejected.

The federal habeas corpus statute explicitly states that a federal court can "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added). "It is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension." Wainwright v. Goode, 464 U.S. 78, 83 (1983) (per curiam) (emphasis added). In this case, however, Petitioner has not identified any constitutional basis for his claims for relief. The Constitution is never mentioned, or even alluded to, in Ground One or Two of the current petition, and nothing in Petitioner's submissions suggests that any federal constitutional principles might be implicated by those claim. Because no federal constitutional dimension can be found in Petitioner's first two claims for relief, they cannot be entertained in federal court.

Furthermore, even if Petitioner would hereafter mount a belated effort to identify some constitutional basis for Grounds One and Two, no such constitutional claim could be entertained here. As discussed above, a state prisoner cannot raise a claim for relief based on an alleged violation of his federal constitutional rights, unless that claim was first fairly presented to, and decided on the merits by, the highest possible state court. 28 U.S.C. § 2254(b).

C. Grounds One and Two Fail on the Merits

The Court notes, however, that even if Petitioner could identify some federal constitutional basis for Grounds One and Two, and even if he could show that the same federal constitutional arguments were raised in his direct appeal in the state courts, he still could not prevail on those claims here. Federal habeas corpus relief can be granted to a state prisoner only if he shows that he is in custody by reason of a state court decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or... was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

1. Ground One

Since the Minnesota Supreme Court denied review, the question is whether the findings and holding of the Minnesota Court of Appeals involve either an "unreasonable determination of facts in light of the evidence presented", or if the court of appeals' holding is "contrary to" federal precedent. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). The standard of appellate review for determining whether a trial court has properly exercised its discretion in declaring a mistrial over a defendant's objection was first addressed by the United States Supreme Court in United States v. Perez, 22 U.S. 579, 580 (1824). The Supreme Court stated:

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. Id. (emphasis added).

Under federal law, manifest necessity to justify declaring a mistrial exists where a judge, juror, or witness has become ill or unavailable. See, e.g., United States v. Lynch, 467 F.2d 575 (D.D.C. 1978), cert. denied 440 U.S. 939 (1979)(illness of judge is an exigency to justify mistrial) Cherry v. Director, 635 F.2d 414, 421 (5th Cir. 1981)(death of a juror's parent was manifest necessity to justify mistrial and allow retrial); United States ex rel. Gibson v. Ziegele, 479 F.2d 773, 777 (3d Cir. 1973)(trial court did not abuse its discretion in declaring a mistrial over defendant's objection when key prosecution witness became ill during trial; manifest necessity justifying retrial was present); Loux v. United States, 389 F.2d 911, 921 (9th Cir. 1968), cert. denied 393 U.S. 867 (1968)(where co-appellant was injured in a courthouse steps fall, court states that the trial court "properly declared a mistrial").

Moreover, in Shaw v. Norris, 33 F.3d 958 (8th Cir. 1994), the magistrate judge concluded that manifest necessity allowing retrial existed upon facts similar to those in this case. In Shaw, after the jury had been deliberating for approximately three hours, one of the jurors began vomiting. Id. at 959. In addition, the foreperson informed the court that although it had reached a decision on one of the counts, it was divided on the remaining two counts. Id. The Eighth Circuit noted that "the magistrate judge observed that the record contained ample evidence that the jury was in fact deadlocked, that one juror was in ill health, and that the state trial judge's decision to declare a mistrial was not arrived at through improper motives." Id. at 960-961. The Shaw Court stated "that instances in which a mistrial is declared because of juror illness are similar in kind and nature to those involving juror deadlock, and...trial courts in these circumstances are to be afforded great deference." Id. at 962. The court concluded that manifest necessity existed for declaring a

mistrial on the independent basis of either a juror deadlock or juror illness. Id. at 963. The court when on to further state that "when these circumstances are found in tandem, we have no difficulty concluding that the manifest necessity standard is satisfied and that the trial judge exercised sound discretion in dismissing the jury." Id.

This Court also agrees that manifest necessity existed to justify declaring mistrial. The Minnesota Court of Appeals puts it best:

> Not only was the actual number of jurors dwindling but also the extraneous concerns of some remaining jurors raised the genuine possibility of their significant distraction from the case at hand. One juror had been excused for a vacation. One juror had a vacation scheduled to begin on the day the jury was to resume its deliberations. Still another juror had a vacation scheduled to begin if deliberations went beyond the next day. It was not at all certain when the ill juror might return. There was a disagreement between counsel as to whether a ten-member jury was acceptable. The foreperson reported that at that point there was not a likelihood that the jury could reach a unanimous verdict. Add to this litany of problems the court would be in if it did not excuse jurors with impending vacations, having already excused one juror for that very reason. Yeboah, 691 N.W.2d at 87.

Such circumstances would warrant the declaration of a mistrial for manifest necessity in light of the Shaw holding. Moreover, the court's decision was clearly not compelled by bad-faith prosecutorial conduct aimed at triggering a mistrial in order to get another day in court. The trial court properly exercised its discretion in declaring a mistrial based upon cumulative effect of the manifest jury problems and the Minnesota Court of Appeals affirmation of this mistrial declaration was consistent with applicable federal precedent. Therefore, Petitioner has not shown that the court's determination that manifest necessity existed for the declaration of the mistrial was "contrary to, or involved an unreasonable application of," any Supreme Court precedent; nor has he shown that the state court's decision to declare a mistrial for manifest necessity was based on any "unreasonable

determination of the facts."

2. Ground Two

In Ground Two, Petitioner contends that the court improperly required the polling of the jury in the absence of the ill juror. As stated earlier, this claim was not fairly presented as a federal issue to the state courts. However, even if the court erred in ordering the polling of the jury, the Court finds that there was manifest necessity for a mistrial and thereby resolves this issue.

3. Ground Three

Petitioner argues in Ground Three that retrial of his case was barred by the double-jeopardy clauses of the United States and Minnesota constitutions because the mistrial was declared over his objection. This claim was fairly presented as a federal constitutional issue to the state courts. The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from being retried for the same offense. Oregon v. Kennedy, 456 U.S. 667, 671 (1982). The Double Jeopardy Clause affords a criminal defendant a "valued right to have his trial completed by a particular tribunal" Id. at 671-72. However, the Double Jeopardy Clause does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding. Id. at 672. Where the trial is terminated over the objection of the defendant, the classical test for lifting the double jeopardy bar to a second trial is the "manifest necessity" standard. Id. As previously stated, the Court concludes that there was manifest necessity to declare a mistrial in this case, which means Petitioner's retrial was not barred by the Double Jeopardy Clause of the U.S. Constitution. Accordingly, Petitioner has failed to prove that

his retrial was "contrary to, or involved an unreasonable application of," federal constitutional precedent.

**III. CONCLUSION**

In sum, the Court concludes that two of Petitioner's three current claims for relief, namely Grounds One and Two, were not fairly presented as federal issues to the state courts for this Court to review and therefore must be summarily rejected. Even if Petitioner were able to identify some federal constitutional basis for Grounds One and Two, those claims still should be denied because the Court finds that the trial court properly exercised its discretion in declaring a mistrial for reasons of manifest necessity and the Minnesota Court of Appeals affirmation of this mistrial declaration was consistent with applicable federal precedent. Furthermore, in light of the finding by this Court that there was manifest necessity justifying the declaration of a mistrial, Petitioner's federal constitutional right to be protected from double jeopardy was not violated when he was subsequently retried for the same offenses.

**III. RECOMMENDATION**

Based upon the foregoing, and all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT**:

1. Petitioner's application for a writ of habeas corpus, [Docket No. 1], be **DENIED**; and

2. This action be **DISMISSED WITH PREJUDICE**.

DATED: February 8, 2008

s/ Arthur J. Boylan

ARTHUR J. BOYLAN
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **February 21, 2008**.